This is Gonzalez. Mr. Babler? Good morning, Your Honor. Please the court. This court should reverse Mr. Gonzalez conviction for possession of methamphetamine with intent to distribute and remand the case for resentencing. At the heart of this case is a simple proposition. Conviction of possession requires evidence tying the defendant to the specific contraband he is accused of possessing. In this case, the government failed to do that, therefore the conviction must be reversed. There is quite a bit of evidence at the trial below about connecting Mr. Gonzalez to the conspiracy. There is testimony from co-conspirators. There is evidence of some amounts of methamphetamine that were recovered. But there was not a connection between Mr. Gonzalez and the specific methamphetamine seized from Mr. Hernandez' house in the apartment in East St. Louis on the day that they were arrested, September 15th. Because there was not a connection to the specific methamphetamine from the apartment, there is not sufficient evidence that Mr. Gonzalez constructively possessed that methamphetamine. This case is very much like this court's case in Herrera. In Herrera, there is narcotics that were found in a house where the defendant had been, locked in a footlocker in the laundry room. And even though the defendant could be connected to other narcotics, the connection to a similar type, in that case it was brown heroin, a similar type of brown heroin, didn't connect him to methamphetamine. The heroin seized in the footlocker in the laundry room. It's very similar to this case. There are some similarities, it's true. Could you, Mr. Babler, I guess address whether any witnesses of the other defendants who were charged testified about the methamphetamine found in the cooler? They did not. Was there any indication, I understood the government's theory to be in essence, look, Hernandez doesn't scratch his nose without getting permission from Gonzalez. And therefore, the meth in Hernandez's stash house has got to be what came from Gonzalez. Is there any indication in the record of any freelance work that Hernandez was doing independently of Gonzalez? Yes, there is. What is that? There was some indication that Mr. Hernandez would give some methamphetamine to the people under him, Mr. Weil, for example, without Mr. Gonzalez's permission or knowledge. There is testimony about that from Mr. Weil and it was discussed on some of the telephone calls. And there was also some evidence that there was more than one source of methamphetamine. There was an earlier source from Las Vegas, that individual had been, the connection was gone by September when he was arrested. But then there was also a discussion on the record of some other individual who was not further upstream than Mr. Gonzalez and Mr. Hernandez, but was, I think the record said, another, a different head wear, I think it meant head water, a different source of methamphetamine that was coming. Where did that come from? That was Mr. Weil's testimony. Weil? Okay. Yes. So there was the evidence that there was perhaps different sources and then there was also the evidence that Mr. Gonzalez didn't oversee the distribution of every bit of methamphetamine in the conspiracy. There was some that Mr. Hernandez gave to Mr. Weil without Mr. Gonzalez's knowledge. And so therefore, he didn't control everything in the entire conspiracy, all 30 to 60 pounds, is what the testimony was. If we were to agree with you, what would the remedy be? The remedy would be a remand. He's still got the heavy sentence for the conspiracy, right? He does. He would still have the sentence, he'd still have the conviction for conspiracy and the conviction for the possession of the firearm and furtherance of the drug trafficking crime. But the remedy would be a remand for resentencing. Under this court's cases, there's a discussion that the district judge may, even in the same charges, conspiracy and possession with intent to distribute, the district judge nevertheless may have sentenced the defendant to a higher total concurrent sentence, erroneously believing that there was two counts rather than one. So it's the court's usual practice to remand for resentencing, and that is what we're requesting. And back to the government's theory of the case that Mr. Gonzalez controlled everything. In this case, they seem to rely primarily on Windham and Rodriguez for that proposition, this court's former cases. In Rodriguez, I think Rodriguez is different than this case because there is a single set of narcotics. In that case, it was cocaine. There were six kilograms, and they knew where it came from and they knew where it was going, and the question was simply a matter of control. In this case, there was some testimony that there was control over a shipment supposedly that was supposed to be sent from California, but there was no, the final link is missing. There was nothing that connected the actual methamphetamine seized to that which was supposedly sent or was supposed to be sent from California before Mr. Gonzalez would arrive. And without that missing link, that's why there's insufficient evidence for constructive possession in this case. Which, in a sense, is also like Windham, the other case that the government relies on. There was quite a few convictions for possession, but one of the convictions was reversed. It was certain narcotics that were in a backpack in the place where Mr. Windham was arrested. When Mr. Windham was arrested, he had money on his person from a controlled buy. He had also connection to other narcotics that were seized, but the connection to the money from the controlled buy wasn't enough to connect him to the drugs in the backpack because the government failed to connect all of the steps. And it's the same problem that exists here. There was perhaps enough evidence to tie Mr. Gonzalez to the controlled buy that took place the day before he was arrested. There was some suggestion that that methamphetamine came from here, but there was no connection made to the actual methamphetamine seized. The only connection was that there was, a couple officers testified that there was wrapping paper, or there was wrappers that they thought it might be related, but there was no testing that was submitted to the jury to make that link. I see that I'm into my rebuttal time, so I'll reserve the rest of my time. Okay, thank you Mr. Davenport. Mr. Boyce. May it please the court, good morning. Don Boyce from Southern Illinois here for the United States. Asking the court to affirm the conviction in this case because there was more than ample evidence to show that Willie Gonzalez wasn't a mere bystander in this case. He was the person who exercised control over these drugs through others. That's the theory of constructive possession. There's a lot of historical evidence about the dealings with this organization. Basically, Zachary Weil was a guy who lived in the St. Louis area. He got 30 to 60 pounds of methamphetamine from Gonzalez who lived out in California during the relevant time period. Weil explained that Gonzalez was out there, he had the supplier for the ice. Gonzalez sent Hernandez to Belleville, Illinois to hold the ice and to parcel it out to Weil and then to collect the money and send it back to Gonzalez. Weil said Gonzalez was the boss. He was the one who ultimately was the supplier. He was the one to whom the money was owed. Once Weil was caught, he engaged in a number of recorded conversations with both Hernandez and Gonzalez. Those showed that Gonzalez is the one who's in charge of this whole operation and that the drugs that are coming in are his. Did Hernandez testify? Sorry? Hernandez testified, correct? Hernandez did not testify. Gonzalez did. A number of Hernandez's statements were played because they were recorded without his knowledge. They were played as co-conspirator statements. So we have Hernandez's voice throughout the trial but not his testimony. Okay. Did anybody testify specifically about the methamphetamine in the cooler? Well, Weil talked about ordering it from Gonzalez. From Gonzalez or Hernandez? From Gonzalez. He was on the phone with Gonzalez in the phone calls leading up to it. So the methamphetamine arrived in the middle of September. The last conversations were in late August, like August 27th. Weil is recorded talking to Gonzalez. They're saying, all right, I'm getting ready. I'll be there soon. The load is coming. Gonzalez even says to Weil, line them up, line up the people to buy it because it's coming. The next thing that Weil learns is from Hernandez is that the ice has arrived. The key that ties this all together as to this particular contraband is the DEA sets up one more deal so they can get probable cause for Hernandez's apartment. The initial deal is for two ounces. That's the first agreement. Weil calls back to Hernandez and says, can we make it a half pound? I really don't want to mess around with this little two ounces. Hernandez's response is, well, I have to check with Gonzalez and see if that's okay. So he needs Gonzalez's permission to sell the half pound on the 14th. So that deal happens on the 14th in the evening. It was dark out. They get the search warrant at midnight. The warrant is executed the next morning at about 8 a.m. after the group gets back from being out all night. That's when the drugs are recovered. That's when they find the empty packaging, which suggested to everyone that the drugs that had been delivered, the half pound the night before, for which Hernandez needed permission to deliver it, that that had come from this same load. So all that suggests very strongly that these are Gonzalez's drugs, that he possesses them through intermediaries. To distinguish the Herrera case that was mentioned a minute ago, the difference there would be if the owner of the house where the footlocker was had said, you need Herrera's permission to get that heroin out of there. That would be the fact that would make it more like our case and would have shown that Herrera really was the one who controlled those drugs. Manzella is quoted throughout the briefs. There's a line in that that says, it would be odd if a dealer could not be guilty of possession merely because he had the resources to hire a flunky to have custody of the drugs. That's our case here. Gonzalez had the resources to hire a courier to bring the drugs out in the first place. He had the resources to set up Hernandez in the house in Belleville to hold onto the drugs and to parcel them out to Weil and, likewise, to collect the money. So are there any questions from the panel? If that's the government's argument, I'd ask you to affirm. Thank you, Mr. Boyce. Mr. Baber, do you have anything further? Just briefly, Your Honor. The government's theory seems to hold Mr. Gonzalez for all responsible from a constructive possession theory for all the methamphetamine in the conspiracy. While there is evidence that he could be liable on a conspiracy theory, it doesn't mean he constructively possessed every bit of methamphetamine that was part of the conspiracy. If he can tell, if he can order it to be moved and bought and sold and so on, why isn't that enough? Apparently constructive possession just means authority over. If there was a link tying the methamphetamine in the cooler to something he was currently possessing or controlling, that could be enough. But it sounds like the farthest the government gets with its links is the control by the night before. Well, Mr. Boyce gave the example of someone saying that he had to get Gonzalez's permission to sell, transfer, whatever. Wouldn't that suggest that Gonzalez controlled the meth? It would if we knew that the meth and the controlled by came from the cooler. The only evidence that the government put on to link the two was testimony from officers who said they guessed that the empty packaging meant that perhaps some of the meth had already been distributed. But the government could have put on as evidence tying the two, testing the meth and linking it chemically to the meth from the cooler, when the lack of that link in Herrera is part of the reason why this court reversed. It was a different type of meth in the footlocker from that on the person. The government shouldn't be rewarded by not testing it at all. Likewise in Windham, there was money from a controlled by that was on the defendant, but the government failed to link the money to the controlled by to the source of the drug as being from the backpack. That final link is missing in this chain here. If the government had tested and put on evidence from chemically linking the meth from the controlled by with its source being the cooler, we would be much tougher to make this argument because that final link would be there. But when the government failed to make that link, that's why there's insufficient evidence to convict Mr. Gonzalez of constructive possession of the specific meth in the cooler in the apartment, Mr. Hernandez. Was Gonzalez paying the rent on this place? There was testimony, or there was, in one of the recordings, there was a statement that he was supposed to be paying the rent, but he had not paid rent in three months. And this court, I see that my time is up. No, go ahead, finish. And this court's case is about rent. There's an individual who rents an apartment, has keys to an apartment, and it's the theory that when you control a residence, you're responsible for the, and so he did not control the residence in this case. How would you describe the relation between Hernandez and Gonzalez? What freedom of action did Hernandez have? Didn't he have to report everything to Gonzalez?  And there's testimony that Gonzalez was upset that there was money missing or meth missing, and that was supposedly the reason for Mr. Gonzalez' trip to East St. Louis. So he was, according to the testimony, he was underneath Mr. Gonzalez. And Mr. Wiles beat him, right? I'm sorry? Mr. Wiles was beaten up pretty badly, wasn't he? There was one incident where he was, yeah, pistol-whipped because of — Gonzalez's orders was the evidence? That was the testimony, yes. Okay. Okay, well, thank you very much. Thank you, Your Honor. Were you appointed? Yes, we were. Well, we thank you on behalf of Mr. Wiles. We thank Mr. Boyce.